LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


Attorney for Plaintiff Foster

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TROY FOSTER; individually, and on behalf of all others similarly situated,<br><br>Plaintiff Foster,<br><br>v.<br><br>HEALTH RECOVERY SERVICES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><u>DEMAND FOR JURY TRIAL</u><br><br>Judge<br>Magistrate Judge |

## INTRODUCTION

Plaintiff Troy Foster (referred to herein as "Plaintiff"), individually and on behalf of himself and all others similarly situated, brings this Class Action Complaint against Defendant Health Recovery Services, Inc. (referred to herein as "HRS") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents, as to all other matters:

## PARTIES

1. Plaintiff Troy Foster is a resident of Athens, Ohio. He is, and was during the period of the Defendant HRS' data breach, a citizen of the State of Ohio. Plaintiff Foster was a

recipient of services from Health Recovery Services, Inc., and thus had his Personal Information compromised as a result of Defendant HRS' data breach.

2. Defendant Health Recovery Services, Inc. is an Ohio private non-profit 501(c)3 corporation with its principle place of business in Athens, Ohio. Defendant HRS' website states that its mission involves "serving those affected with mental illness and alcohol, tobacco, and drug addiction." Defendant HRS states that they offer "both outpatient and residential treatment options for **consumers**."

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. At least one Plaintiff and one Defendant are citizens of different states. There are more than 100 putative class members.

4. This Court has personal jurisdiction over Defendant Health Recovery Services, Inc. because they regularly conduct business in Ohio and have sufficient minimum contacts in Ohio.

## GENERAL ALLEGATIONS

5. Defendant Health Recovery Services, Inc. is an Athens, Ohio based provider of alcohol and drug addiction services. In providing these services, Defendant HRS collects and stores the Personal Information of recipients of these services. This Personal Information includes, but is not limited to, names, addresses, telephone numbers, dates of birth, medical information, health insurance information, diagnoses, treatment information, and social security numbers.

6. Social security information and health related information of the type that was involved in this data breach is entitled to high level of protection due to its private and confidential nature. The protection to which this information is entitled is recognized by statutory and case law, including the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The combination of this information with the names and birth dates of Plaintiff Foster and Data Breach Class members enhances the sensitivity of the information, making it susceptible to abuse and exploitation and requires the utmost protection in its handling.

7. Defendant HRS knew and understood the confidential and private nature of the Personal Information of Plaintiff Foster and Data Breach Class members and owed a duty to Plaintiff Foster and Data Breach Class members to protect and maintain the confidentiality of the Personal Information. In particular, social security numbers are a form of national identifier and are not easily replaced. Unlawful exploitation of social security numbers costs the federal government hundreds of millions of dollars a year from the fraudulent filing of tax returns by identity thieves and extols a severe financial toll on persons whose social security numbers are stolen and/or misappropriated.

8. The present case stems from the unauthorized access of Defendant HRS' computer storage systems. On February 5, 2019, Defendant HRS discovered that an unauthorized IP address had remotely accessed its computer network which contained the Personal Information of Plaintiff Foster and Data Breach Class members since November 14, 2019.

9. Despite Defendant HRS' duty to expeditiously notify individuals that their Personal Information may have been compromised, Defendant HRS kept its knowledge of the data breach secret from Plaintiff Foster and Data Breach Class members until releasing notification titled "NOTICE OF DATA INCIDENT" on April 5, 2019, roughly two months after Defendant discovered that the Personal Information of Plaintiff Foster and the Data Breach Class members had been compromised and misappropriated since November 14, 2018.

10. As a result of Defendant HRS' failure to adequately protect and secure the Personal Information in its possession and failure to timely detect the breach and failure to follow state and federal laws related to protecting health information, unauthorized individuals gained and kept access to and obtained Personal Information belonging to Plaintiff Foster and Data Breach Class members. Once an unauthorized person or persons gain access to and steal this Personal Information, it can be used for improper purposes, including the theft of the identity of Plaintiff Foster and the Data Breach Class members, among other illicit purposes.

11. It is well known and the subject of many media reports that Personal Information data is highly coveted by and a frequent target of hackers and is often easily taken because it is inadequately protected. Legitimate organizations and the criminal underground alike recognize the value in Personal Information. Otherwise, they wouldn't pay for it or aggressively seek it. Personal Information data has been stolen and sold by the criminal underground on many

occasions in the past. While Payment Card Industry data (PCI) is more regulated and protected than Personal Information, criminals are increasingly after Personal Information because they can use biographical data. Despite all of the publically available knowledge of the continued compromises of Personal Information, Defendant HRS' approach at maintaining the privacy of the Personal Information in its possession was lackadaisical, cavalier, reckless or at the very least negligent.

12. Defendant HRS' failure to maintain reasonable and adequate procedures to protect and secure the Personal Information and Defendant HRS' failure to timely discover the unauthorized access and failure to provide Plaintiff Foster and Data Breach Class members with timely information regarding the unauthorized access to their Personal Information, has resulted in financial injuries to Plaintiff Foster and Data Breach Class members, as well as Plaintiff Foster and Data Breach Class members being placed at grave risk of identity theft and other possible fraud and abuse.

13. According to Javelin Strategy and Research, "1 in 4 data breach notification recipients became a victim of identity fraud." *See* 2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at [www.javelinstrategy.com/brochure/276](www.javelinstrategy.com/brochure/276).

14. Identity thieves can use the type of Personal Information accessed in Defendant HRS' data breach to open new financial accounts and incur charges in another person's name, take out loans in another person's name, incur charges on existing accounts, or clone ATM, debit or credit cards.

15. Identity thieves can use Personal Information such as that pertaining to this Defendant HRS' data breach to perpetuate a variety of crimes that harm the victims. For instance, identity thieves may commit various types of government crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund. Some of this activity may not come to light for years.

16. In addition, identity thieves may get medical services using consumers' lost information or commit any number of other frauds, such as obtaining a job, procuring housing or even giving false information to police during an arrest.

17. Once Personal Information is stolen, the fraudulent use of that information and the resulting damage to consumers, and in this case, Plaintiff Foster and Data Breach Class members, may continue for years.

18. There is a strong probability that entire batches of stolen information have yet to be dumped on the black market, meaning individuals whom Defendant HRS' had the Personal Information of could be at risk of fraud and identity theft for years into the future.

19. Plaintiff Foster and Data Breach Class members have suffered irreparable damage and will continue to suffer damages from the misuse of their Personal Information. As a proximate result of the unauthorized access, Plaintiff Foster and Data Breach Class members have had their Personal Information compromised, their privacy invaded, have incurred or will incur out-of-pocket costs and have otherwise suffered economic damages. Because of the data breach, Plaintiff Foster and the Data Breach Class have or should have their credit monitored by a professional credit monitoring service such as LifeLock or Identity Guard. Because of the absence of adequate protection to safeguard the Personal Information of Plaintiff Foster and Data Breach Class members, protection through the issuance of an injunction against continued and future unauthorized intrusions and access is essential to safeguard the Personal Information of Plaintiff Foster and Data Breach Class members.

20. Plaintiff Foster expressly reserves the right to supplement this Complaint as other information relevant to this action becomes available.

## OHIO CLASS DEFINITION AND RULE 23 ALLEGATIONS

21. Plaintiff Foster brings the Claims for Relief for violations of Ohio law as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff Foster brings these claims on behalf of himself and all members of the following Class ("Data Breach Class") comprised of:

**A. Data Breach Class**

All individuals residing in the United States whose Personal Information was compromised as a result of the data breach first disclosed by Defendant Health Recovery Services, Inc. on April 5, 2019.

22. The proposed class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

23. **Numerosity (Rule 23(a)(1)).** The proposed Data Breach Class includes many thousands of customers whose data was compromised in the data breach. While the precise

number of Class members has not yet been determined, the massive size of the data breach indicates that joinder of each member would be impracticable.

24. **Existence of Common Questions of Law and Fact (Rule 23(a)(2)).** Common questions of law and fact exist and predominate over any questions affecting only individual Data Breach Class members. The common questions include:
   a. Whether or not Defendant HRS engaged in the conduct alleged herein;
   b. Whether or not Defendant HRS's conduct constituted deceptive trade practices actionable under the applicable consumer protection laws;
   c. Whether or not Defendant HRS had a legal duty to adequately protect Plaintiff Foster's and Data Breach Class members' Personal Information;
   d. Whether or not Defendant HRS breached its legal duty by failing to timely detect a data breach.
   e. Whether or not Defendant HRS breached its legal duty to adequately protect Plaintiff Foster's and Data Breach Class members' Personal Information;
   f. Whether or not Defendant HRS had a legal duty to provide timely and accurate notice of the data breach to Plaintiff Foster and Data Breach Class members;
   g. Whether or not Defendant HRS breached its duty to provide timely and accurate notice of the data breach to Plaintiff Foster and Data Breach Class members;
   h. If and when Defendant HRS knew or should have known that Plaintiff Foster's and Data Breach Class members' Personal Information stored on its computer systems was vulnerable to attack;
   i. Whether or not Plaintiff Foster and Data Breach Class members are entitled to recover actual damages and/or statutory damages; and
   j. Whether or not Plaintiff Foster and Data Breach Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

25. **Typicality (Rule 23(a)(3)).** Plaintiff Foster's claims are typical of the claims of the Data Breach Class. Plaintiff Foster and the Data Breach Class members were injured through Defendant HRS' uniform misconduct and their legal claims arise from the same core Defendant HRS practices.

26. **Adequacy (Rule 23(a)(4)).** Plaintiff Foster is an adequate representative of the proposed Data Breach Class because his interests do not conflict with the interests of the Data Breach Class members he seeks to represent. Plaintiff Foster's counsel is very experienced in litigating consumer class actions and complex commercial disputes.

27. **Injunctive and Declaratory Relief (Rule 23(b)(2)).** Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Defendant HRS acted or refused to act on grounds generally applicable to the members of the Data Breach Class, making appropriate declaratory relief with respect to the members of the Data Breach Class as a whole.

28. **Predominance and Superiority of Class Action (Rule 23(b)(3)).** A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Data Breach Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendant HRS. Even if it were economically feasible, requiring thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

29. Finally, all members of the proposed Class are readily ascertainable. Defendant HRS has access to addresses and other contact information for thousands of members of the Class, which can be used to identify Data Breach Class members.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### Against Defendant Health Recovery Services, Inc.
### Violation of Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*)
### (On Behalf of Plaintiff Foster and the Data Breach Class)

30. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

31. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

32. The Ohio Consumer Sales Practices Act (Ohio CSPA), Ohio Rev. Code § 1345.02 *et seq.*, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that the products and services of Defendant HRS have characteristics, uses, benefits,

and qualities which they do not have, (2) representing that the products and services of Defendant HRS are of a particular standard, quality, and grade when they are not, (3) advertising the products and services of Defendant HRS with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

33. Defendant is a "supplier" as that term is defined in Ohio Rev. Code § 1345.01(C).

34. Plaintiff Foster and the Data Breach Class members are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their use of the products and services of Defendant HRS are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

35. As a result of the foregoing wrongful conduct, Plaintiff Foster and the Data Breach Class have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Cod § 1345.09 *et seq*.

## SECOND CLAIM FOR RELIEF
### Against Defendant Health Recovery Services, Inc.
### Negligence
**(On Behalf of Plaintiff Foster and the Data Breach Class)**

36. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

37. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

38. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

39. Defendant HRS solicited, gathered, and stored Personal Information (including, but not limited to names, addresses, telephone numbers, dates of birth, medical information, health insurance information, diagnoses, treatment information, and social security numbers) of its patients, including Plaintiff Foster and the Data Breach Class.

40. Defendant HRS knew, or should have known, the risks inherent in collecting and storing the Personal Information of Plaintiff Foster and the Data Breach Class and the importance of adequate security. Defendant HRS knew, or should have known, about other publicized data breaches at other health care providers, agencies, and businesses.

41. Defendant HRS owed duties of care to Plaintiff Foster and the Data Breach Class whose Personal Information was entrusted to it. Defendant HRS's duties included the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting the Personal Information of its patients;
   b. To protect patients' Personal Information using reasonable and adequate security procedures and systems that are complaint with Ohio laws and consistent with industry-standard practices;
   c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and
   d. To promptly notify patients of the data breach.

42. Because Defendant HRS knew that a breach of its systems would damage its more than 20,000 patients, including Plaintiff Foster and the Data Breach Class, it had a duty to adequately protect their Personal Information.

43. Defendant HRS owed a duty of care to not subject Plaintiff Foster and the Data Breach Class to an unreasonable risk of harm because they were foreseeable and probably victims of any inadequate security practices.

44. Defendant HRS knew, or should have known, that its computer systems did not adequately safeguard the Personal Information of Plaintiff Foster and the Data Breach Class.

45. Defendant HRS breached its duties of care by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Personal Information of Plaintiff Foster and the Data Breach Class.

46. Defendant HRS acted with reckless disregard for the security of the Personal Information of Plaintiff Foster and the Data Breach Class because Defendant HRS knew or should have known that its computer systems and data security practices were not adequate to safeguard the Personal Information that that it collected and stored, which unauthorized persons were attempted to, or did access.

47. Defendant HRS acted with reckless disregard for the rights of Plaintiff Foster and the Data Breach Class by failing to provide prompt and adequate notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use of the Personal Information compromised in the data breach by unauthorized persons.

48. Defendant HRS had a special relationship with Plaintiff Foster and the Data Breach Class. Plaintiff Foster's and the Data Breach Class' willingness to entrust Defendant HRS with their Personal Information was predicated on the understanding that Defendant HRS

would take adequate security precautions to protect that Personal Information. Moreover, only Defendant HRS had the ability to protect its systems (and the Personal Information that it stored on them) from attack.

49. If not for Defendant HRS' wrongful and negligent breach of the duties it owed Plaintiff Foster and the Data Breach Class, their personal and financial information either would not have been compromised and they would have been able to prevent some or all of their damages.

50. As a direct and proximate result of Defendant HRS' negligent conduct, Plaintiff Foster and the Data Breach Class have suffered damages and are at imminent risk of further harm.

51. The injury and harm that Plaintiff Foster and the Data Breach Class members suffered (as alleged above) was reasonably foreseeable.

52. The injury and harm that Plaintiff Foster and the Data Breach Class members suffered (as alleged above) was the direct and proximate result of Defendant HRS' negligent conduct.

53. Plaintiff Foster and the Data Breach Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Against Defendant Health Recovery Services, Inc.**
**Breach of Contract**
**(On Behalf of Plaintiff Foster and the Data Breach Class)**

54. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

55. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

56. Plaintiff Foster and the Data Breach Class members are parties to express agreements with Defendant HRS whereby Plaintiff Foster and the Data Breach Class members provide their Personal Information to Defendant HRS in order to receive Defendant HRS' services, including the provision of reasonable safeguards to prevent the unauthorized disclosure of Plaintiff Foster's and the Data Breach Class members' Personal Information.

57. Defendant HRS' failure to implement an adequate and reasonable data privacy and cybersecurity protocol which included adequate prevention, detection, and notification

procedures constitutes a breach of a contract between Defendant and Plaintiff Foster and the Data Breach Class members.

58. Plaintiff Foster and the Data Breach Class members relied upon Defendant HRS' representations that it would keep their Personal Information private and secure.

59. Plaintiff Foster and the Data Breach Class members performed their obligations by providing their Personal Information to Defendant HRS in connection with receiving Defendant HRS' services.

60. Defendant HRS breached its obligation to maintain adequate safeguards to protect the privacy and security of Plaintiff Foster and the Data Breach Class members.

61. As a direct and proximate result of Defendant HRS' breach of its contractual obligations, Plaintiff Foster and the Data Breach Class have suffered damages and are at imminent risk of further harm.

**FOURTH CLAIM FOR RELIEF**
**Against Defendant Health Recovery Services, Inc.**
**Breach of Implied Contract**
**(On Behalf of Plaintiff Foster and the Data Breach Class)**

62. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

63. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

64. Plaintiff Foster and the Data Breach Class members were required to provide Defendant HRS their Personal Information in order to receive Defendant HRS' services. To the extent that it is found that Defendant HRS did not have an express contract with Plaintiff Foster and the Data Breach Class members, Defendant HRS entered into implied contracts with Plaintiff Foster and the Data Breach Class members whereby, by virtue of such requirement to provide their Personal Information, Plaintiff and the Data Breach Class members entered into implied contracts whereby Defendant HRS was obliged to take reasonable steps to secure and safeguard such Personal Information.

65. Defendant HRS' failure to implement an adequate and reasonable data privacy and cybersecurity protocol which included adequate prevention, detection, and notification procedures constitutes a breach of an implied contract between Defendant and Plaintiff Foster and the Data Breach Class members.

66. Plaintiff Foster and the Data Breach Class members performed their obligations by providing their Personal Information to Defendant HRS in connection with receiving Defendant HRS' services.

67. Defendant HRS breached its obligation to maintain adequate safeguards to protect the privacy and security of Plaintiff Foster and the Data Breach Class members.

68. As a direct and proximate result of Defendant HRS' breach of its contractual obligations, Plaintiff Foster and the Data Breach Class have suffered damages and are at imminent risk of further harm.

**FIFTH CLAIM FOR RELIEF**
**Against Defendant Health Recovery Services, Inc.**
**Unjust Enrichment**
**(On Behalf of Plaintiff Foster and the Data Breach Class)**

69. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

70. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

71. Plaintiff Foster and the Data Breach Class members conferred a benefit to Defendant HRS when they entered into a contractual agreement with Defendant HRS and provided payment for Defendant HRS' services.

72. In exchange for, and in consideration of, Plaintiff Foster and the Data Breach Class members providing payment for Defendant HRS' services, Defendant HRS was required to, and Plaintiff Foster and the Data Breach Class members expected Defendant HRS to, implement reasonable security policies and procedures that would have protected Plaintiff Foster's and the Data Breach Class members' Personal Information.

73. To the extent that Defendant HRS devotes financial resources to the protection of its patients Personal Information, a portion of those financial resources are derived from the benefit conferred by contractual payments made by Plaintiff Foster and the Data Breach Class members to Defendant HRS.

74. As a result of Defendant HRS' acts and omissions as alleged herein, Defendant HRS has been unjustly enriched to the extent that any portion of such contractual payments comprises spending for adequate security not provided.

**SIXTH CLAIM FOR RELIEF**
**Against Defendant Health Recovery Services, Inc.**

### Violation of Ohio's Data Breach Law (Ohio Rev. Code § 1349.19 *et seq.*)
### (On Behalf of Plaintiff Foster and the Data Breach Class)

75. Plaintiff Foster re-alleges all prior paragraphs of the Complaint as if set out here in full.

76. Plaintiff Foster brings this claim on behalf of himself and the Data Breach Class.

77. The State of Ohio has a law that explicitly states by when a "business entity" such as Defendant HRS must notify persons who Personal Information may have been compromised in the event of a data breach. Ohio Rev. Code § 1349.19(B)(2) states that disclosure of a data breach should be made "in the most expedient time possible but not later than forty-five days following its discovery or notification of the breach in the security system[.]"

78. Defendant HRS discovered the data breach on February 5, 2019. Defendant HRS issued its first disclosure concerning the data breach on April 5, 2019. This is 59 days, 14 more days than Ohio Rev. Code § 1349.19 *et seq*. allows.

79. As a result of Defendant HRS' delay in disclosing the existence of the data breach, Plaintiff Foster and the Data Breach Class members lost crucial time which they could have used to protect themselves from the negative consequences that could result from their Personal Information being accessed by and in the possession of unauthorized individuals.

80. As a result of the foregoing wrongful conduct, Plaintiff Foster and the Data Breach Class have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Cod § 1345.09 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Foster, on behalf of himself and the Data Breach Class described above, respectfully asks the Court for the following relief:

(a) An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff Foster is proper representative of the Classes requested herein;

(b) A judgment in favor of Plaintiff Foster and the Data Breach Class awarding them appropriate monetary relief, including actual damages, punitive damages, statutory damages, equitable relief, restitution, disgorgement,

attorney's fees, statutory costs, and such other and further relief as is just and proper;

(c) An order requiring Defendant HRS to pay for Plaintiff Foster and the Data Breach Class members to receive credit monitoring and identity theft protection;

(d) An order providing injunctive and other equitable relief as necessary to protect the interests of the Data Breach Class as requested herein;

(e) An order requiring Defendant HRS to pay the costs involved in notifying the Data Breach Class members about the judgment and administering the claims process;

(f) A judgment in favor of Plaintiff Foster and the Data Breach Class awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law;

(g) Statutory and liquidated damages; and

(h) An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

81. Plaintiff demands a trial by jury on all triable issues.


DATED: October 6, 2019                                    Respectfully submitted,


                                                    s/ *Michael L. Fradin*
                                                    Attorney for Plaintiff Foster

                                    LAW OFFICE OF MICHAEL L. FRADIN
                                                    Michael L. Fradin, Esq.
                                                    8401 Crawford Ave. Ste. 104
                                                    Skokie, IL 60076
                                                    Telephone: 847-986-5889
                                                    Facsimile: 847-673-1228
                                                    Email: mike@fradinlaw.com