LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

Attorney for Plaintiff and the Putative Class

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TROY FOSTER, individually and on behalf of all others similarly situated<br><br>     Plaintiff,<br><br> vs.<br><br>HEALTH RECOVERY SERVICES, INC.<br><br>     Defendant. | Case No. 19-CV-04453<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson<br><br>JURY TRIAL DEMANDED |

Now Comes Plaintiff, Troy Foster ("Plaintiff Foster")," by and through his undersigned attorney, Michael L. Fradin, and for his Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, states as follows:

### I.  INTRODUCTION

Is it okay for a healthcare provider to knowingly fail to comply with industry standards to safely secure the mental health, substance abuse history, HIV status, social security, and other personal information of its patients? Is a patient whose most sensitive health and personal

1

information is exposed for over two months and who attempts to mitigate their damages by paying for credit monitoring not entitled to recoup his damages? Does an offer for credit monitoring by a Defendant, even though the offer was not received or accepted by a Plaintiff, relieve the Defendant from liability? Defendant wishes this were so but, for the reasons set forth below, this is not the case.

## II.     LEGAL STANDARD

When a district court rules on a jurisdictional motion to dismiss without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998) citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (string citations omitted). *Id* at 800.

FRCP 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . the claim is and the grounds on which it rests.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). If a complaint has sufficient facts (if accepted as true with all reasonable inferences) then the complaint states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, U.S., 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). In analyzing a FRCP 12(B)6 motion, the Court should accept the facts alleged in the complaint as true and all reasonable inferences must be drawn in favor of Plaintiffs. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

Because a FRCP 12(B)6 dismissal is a drastic measure, the standard for dismissal under Rule 12(b)(6) is a stringent one. "**[**A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (U.S. 1957). Therefore, for purposes of deciding a Rule 12(b)(6) Motion, the First Amended Complaint should be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  At the pleading stage, plaintiffs are required only to state a plausible claim that each of the standing elements is present. *Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017).

### III.    ARGUMENT

#### A.  STANDING

The 6th Circuit takes a relatively broad viewpoint of Article III standing. The *Galaria* opinion addressed Article III standing in a data breach scenario head on:

> Here, Plaintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation. Plaintiffs allege that the theft of their personal data places them at a continuing, increased risk of fraud and identity theft beyond the speculative allegations of "possible future injury" or "objectively reasonable likelihood" of injury that the Supreme Court has explained are insufficient. Clapper, 133 S. Ct. at 1147-48. There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals. Indeed, Nationwide seems to recognize the severity of the risk, given its offer to provide credit-monitoring and identity-theft protection for a full year. Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints. *Galaria v. Nationwide Mut. Ins*. Co. (6th Cir. 2016) at 6-7.

3

As in *Galaria*, the seriousness of the breach here is demonstrated by the Defendant's offer to provide credit-monitoring and identity-theft protection for one year. Although Plaintiff did not receive any offer letter from Defendant, Defendant does attach an offer letter to its motion that it alleges was mailed to all class members and makes essentially the same offer as the defendant did in *Galaria*.

Following *Galaria*, the 6th Circuit (in Judge Rogers concurring opinion) held that, "a money damages suit is generally an Article III case or controversy. The only exception is when Congress seeks unduly to circumvent the very separation-of-powers principle inherent in the case-or-controversy requirement itself." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 426 (6th Cir. 2019).  Here, Plaintiff does indeed seek money damages and so would satisfy Judge Rogers' test for Article III standing. *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, *concurrence*, 927 F.3d 396, 426-427 (6th Cir. 2019).

Defendant argues that its or its liability carrier's attempts to mitigate damages by offering class members one year of credit monitoring defeats standing.  This is not a proper standing argument but at best a mitigation of damages issue or an offer to compromise issue – there is no cogent argument about how this offer would defeat Plaintiff's standing and if fact, the *Galaria* Court held that an offer to provide this kind of service substantiates the seriousness of the harm for Article III purposes.  Because the offer letter, which Plaintiff neither received nor was aware of at the time of filing his First Amended Complaint (it was not raised as a defense to the Complaint), actually supports standing under *Galaria*, Plaintiff will not move to strike the exhibit from the pleading

and, instead, requests that this Court follow *Galaria* and find that the offer is demonstrative of the seriousness of the damages.

Defendant further argues that Plaintiff incorporates the Notice of Data Breach letter that Defendant references as an exhibit and that the letter distinguishes "access" to the network from "disclosure" of the data stored on the network. Plaintiff, however, did not attach the Notice of Data Breach to his First Amended Complaint; Defendant's attachment of the Notice of Data Breach to its Motion does not incorporate the letter into Plaintiff's pleadings. The notice, which was mostly likely prepared by Defendant's counsel or insurance carrier, is a self-serving document that is not part of Plaintiff's pleadings. Rather, Plaintiff alleges that Defendant made unauthorized disclosures. ECF #6 ¶43.

Regardless, an exhibit attached to a complaint is not incorporated such that a Plaintiff is deemed to have pled statements that are self-serving to a Defendant. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 674 (2nd Cir. 1995). Therefore, Defendant's argument that Plaintiff's First Amended Complaint is limited or otherwise influenced by statements made in Defendant's Notice of Data Breach letter is incorrect. If anything, the statements would serve as admissions by a party opponent as defined by FRCP 801(d)(2).

Furthermore, even if this Court were to agree that Plaintiff incorporates the letter by referencing it in his pleading, it is foreseeable that "access" to data would lead to the disclosure of that data. *Miller v. Ohio Dep't of Rehab. & Corr.*, 2016 Ohio 8626 at 3 (Ohio Ct. Cl. 2016).

The policy behind Article III standing is to ensure that the plaintiff has a personal stake in the litigation. *Attias v. CareFirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017). At

5

the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.... *Attias v. CareFirst, Inc.*, 865 F.3d 620, 625-626 (D.C. Cir. 2017). In *Susan B. Anthony List v. Driehaus* , the Court clarified that a plaintiff can establish standing by satisfying the "substantial risk" test. See 134 S.Ct. at 2341, *Attias v. CareFirst, Inc.,* 865 F.3d 620 (D.C. Cir. 2017).  Here, Plaintiff has suffered actual injuries, both monetary and emotional.  ECF #6 ¶12, 19, 20, 21, 22, 23, 30.

Finally, in analyzing Article III standing in data breach cases, some federal courts look to whether or not there would be standing in the medical monitoring context. See *Stollenwerk v. Tri-West*, 254 F. App'x 664 at 668 (9th Cir. 2007).  Ohio state courts as well as federal district courts sitting in Ohio do indeed treat medical monitoring as recoverable damages.   *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568 (6th Cir. 2005). See also *In re Marine Asbestos Cases* (C.A.9, 2001), 265 F.3d 861; In re *Telectronics Pacing Systems, Inc.* (S.D.Ohio 1996), 168 F.R.D. 203; *O'Neal v. Dept. of the Army of the United States of Am.* (M.D.Pa.1994), 852 F.Supp. 327; *Day v. NLO* (S.D.Ohio 1994), 851 F.Supp. 869. *Riston v. Butler*, 149 Ohio App.3d 390, 777 N.E.2d 857, 2002 Ohio 2308 (Ohio App. 2002).  Therefore, if this Court were to follow *Stollenwerk* and apply a medical monitoring analogy, Article III standing would be satisfied.

### B.  BREACH OF CONFIDENCE

Defendant argues that Plaintiff's Breach of Confidence claim should be dismissed because the disclosure of the protected health information was not intentional.  However, Ohio Courts, including the *Scott* decision relied upon by Defendant, analyze *Biddle* under a foreseeability analysis rather than an intentionality analysis. *Scott v. Ohio Dept. of*

6

*Rehab. & Corr.*, 10th Dist. No. 12AP-755, 2013-Ohio-4383, ¶ 29).  Other Ohio courts follow *Scott* and apply a foreseeability analysis rather than an intentionality analysis,

> [F]urthermore, in light of "the known propensity of some inmates to ingeniously and maliciously exploit any opportunity for leverage over staff or fellow inmates," the court finds that it was *foreseeable* that allowing an inmate to have access to confidential medical information would lead to the disclosure of the information contained therein. *Miller v. Ohio Dep't of Rehab. & Corr.*, 2016 Ohio 8626 at 3 (Ohio Ct. Cl. 2016), *emphasis added*.

Likewise, it is foreseeable here that by failing to implement safeguards or by otherwise allowing an intruder access to the network for two months, it would lead to the disclosure of the information contained therein.  As in *Miller*, it is foreseeable that the failure to protect the health information would lead to a *Biddle* disclosure.

In *Miller*, the Defendant accidently gave HIV medication to the wrong patient.  The *Miller* Court ruled that the accidental disclosure satisfied *Biddle*, because it was foreseeable that failing to protect the information could lead to a disclosure that could be exploited by other inmates.  *Miller v. Ohio Dep't of Rehab. & Corr.*, 2016 Ohio 8626 at 3, (Ohio Ct. Cl. 2016).  In a similar factual situation, the *Cook v. Ohio Dep't of Rehab. & Corr.,* 2018 Ohio 1665 (Ohio Ct. Cl. 2018) also did not require that a Plaintiff allege or prove intentional conduct in a *Biddle* claim.  Likewise, in *Doe v. Ohio Department of Rehabilitation and Correction*, 2012-08575 (8-6-14) adopted jud (11-19-14), the Court determined that negligently leaving an inmate's file that included protected health information in a place where another inmate could access the file was a *Biddle* violation.  The *Doe v. Ohio Department of Rehabilitation and Correction* Court cites *Biddle* and rejects any requirement that a disclosure be intentional.  *Id* at ¶11-12.

In *Doe v. Caremark, L.L.C.*, 348 F.Supp.3d 724 (S.D. Ohio 2018), the Court held that mailing documents that accidentally revealed the HIV status of patients in the see-through portion of the envelope satisfied *Biddle*. Like the defendants in *Caremark*, the Defendant here raises the "actual disclosure" defense. The *Caremark* Court addressed this issue head-on, citing *Biddle*, and holding that a *Biddle* claim does not require the intentional communication of protected health information. *Doe v. Caremark, L.L.C.*, 348 F.Supp.3d 724, 735 (S.D. Ohio 2018). The *Caremark* Court focused instead on whether or not the patients' records were disclosed against the patients' wishes and distinguishes this from any requirement that there be an intentional disclosure. *ID*.

The *Caremark* defendant, like the Defendant here, did request that the Court apply an intentionality test for the plaintiffs' *Biddle* claim; instead, the *Caremark* Court cited to a criminal case to demonstrate differences in the disclosure requirements in a civil and criminal context. Id at *735*. The *Caremark* Court referred to the criminal definition as the "polar opposite of the intention of the *Biddle* decision" and distinguished it from the foreseeability test that is used in a *Biddle* disclosure." *Id* at 735.

Here, Plaintiff alleges that Defendant knew that it was vulnerable to a data breach and yet knowingly and intentionally failed to address that vulnerability and so the foreseeability test is met. ECF #6 ¶43. In fact, there is more foreseeability here than in *Caremark*, where the disclosure was completely accidental and was based on the actions of a third party, Fiserv. *Doe v. Caremark, L.L.C.*, 348 F.Supp.3d 724, 728 (S.D. Ohio 2018). *Caremark* defendants, Caremark, L.L.C. and CVS, were at worst, negligent in hiring a third party Fiserv, who prepared the envelopes for mailing. But this did not

8

preclude them from *Biddle* liability. *Doe v. Caremark, L.L.C.*, 348 F.Supp.3d 724 (S.D. Ohio 2018).

Defendant relies on *Sheldon v. Kettering Health Network*, 40 N.E.3d 661 (Ohio App. 2015) to argue that Plaintiff's *Biddle* claim should be dismissed. However, the dismissal in *Sheldon* was because the plaintiff did not plead a *Biddle* claim but, instead, pled a breach of fiduciary duty claim *Id*. at 673. Here, Plaintiff's Count I is specifically a *Biddle* claim for Breach of Confidence and Plaintiff specifically references *Biddle* as authority for the claim. ECF #6 ¶42. Therefore, Defendant's reliance on *Sheldon*, in which a *Biddle* claim was simply not alleged, is a red herring.

### C. OHIO CONSUMER SALES PRACTICES ACT

Defendant arguments that the Ohio Consumer Sales Practices Act (OCSPA) is inapplicable and that a class action cannot be maintained pursuant to the OCSPA because neither the Ohio Attorney General nor a Court has determined that a data breach violates the OCSPA. This, however, is not true. The Ohio Attorney General published the judgment order between it and Premera Blue Cross for public inspection pursuant to ORC 1345.05 https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/Agreed-Entry-and-Final-Judgment-Order-State-of-Ohi.aspx Furthermore, *State of Ohio v. Premera Blue Cross*, 19-CV-005610, addresses both issues, since not only does the Court adjudicate a HIPAA data breach to be a violation of the OCSPA, but the Ohio Attorney General is a party to the "Agreed Entry and Final Judgment Order."

Just like here, the *Premera* case was commenced under the OCSPA and involved a HIPAA data breach.  Judgment Order §1.1.  The judgment order defines the incident as follows:

> data security incident involving its computer network system which resulted in the unauthorized disclosure of certain consumers' personal information and protected health information. Judgment Order §1.3.

This judgment order specifically notes that it is entered pursuant to the OCSPA. *Judgment Order* §2.6.  To the extent that defendant argues it was not on notice that a data breach could result in class liability for an OCSPA because the *Premera* order post-dated their data breach, it is not the first data breach judgment obtained by the Ohio Attorney General for a data breach that was published for public inspection pursuant to ORC 1345.05  (see https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2017-05-23-Target-Corporation-Assurance-of-Volunta.aspx).  Appendix A to the agreement lists the Ohio *Consumer Sales Practices Act,* 1345.01 et. seq. as the Ohio statute violated by Target's data breach.

### D. NEGLIGENCE

#### i. Plaintiff Pleads Elements of Negligence

The required elements of negligence include the existence of a duty, the defendant's breach of that duty, and an injury to the plaintiff proximately resulting from the defendant's breach. *Ford v. Brooks*, 2012 Ohio 943 (Ohio App. 2012) at 8.  Here, Plaintiff alleges that Defendant owed Plaintiff a duty to take steps to safeguard Plaintiff's health information.  ECF #6 ¶61 – 65, 70.  Plaintiff sufficiently alleges that Defendant breached their duty of care.  ECF #6 ¶67, 68, 69.  Plaintiff also alleges foreseeability and proximate cause ECF #6 ¶71 – 74, as well as damages ECF #6 ¶12, 19, 20, 21, 22, 23, 30.

10

75. Plaintiff's negligence count lists numerous ways in which Defendant could be found to have breached its duty of care and Defendant has not challenged the viability of any of those allegations and, therefore, Plaintiff's negligence claim should not be dismissed.

### ii. The Economic Loss Doctrine Does not Apply

Plaintiff here alleges more than just an economic loss; plaintiff alleges he has suffered severe emotional distress as a result of the exposure of his most sensitive health information, which includes mental health and substance abuse treatment.  ECF #6 ¶30. Courts in this district acknowledge that the unauthorized disclosure of protected health information does result in damages for emotional distress. See *Cook v. Ohio Dep't of Rehab. & Corr.,* 2018 Ohio 1665 (Ohio Ct. Cl. 2018) and *Doe v. Ohio Department of Rehabilitation and Correction*, 2012-08575 (8-6-14) adopted jud (11-19-14). Furthermore, in Ohio, the economic loss doctrine only prohibits the bringing of tort claims where overlapping claims in contract adequately address the alleged losses suffered when they are only economic in nature ) *Cintas Corp. v. First Advantage Enter. Screening Corp. NO. 1:13-CV-00241* (S.D. Ohio 2013).

Defendant relies on *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F.Supp.2d 834 (S.D. Ohio 2013), but the case is distinguishable. In *Wells Fargo*, the gravamen of the complaint was a breach of contract and there was no dispute concerning the existence of a contract.  According to the *Wells* Court,

> [T]he two parties entered into a 'Participation Agreement by and between Wells Fargo Business Credit, Inc. and Fifth Third Bank" ("Participation Agreement"), whereby Wells Fargo purchased a $10 million interest in the Eastern line of credit, increasing the limit on Eastern's account to $32.5 million.  Wells Fargo Bank, N.A. v. Fifth Third Bank, 931 F.Supp.2d 834, 836 (S.D. Ohio 2013).

There was not human or personal component to the damages in *Wells* but strictly an agreement between the parties that was alleged to have been breached. There was not even a person but corporation that was alleging harm. Here we have people, including Plaintiff, who have suffered actual harm beyond the economic harm of a breached contract. Although Plaintiff does make a breach of contract claim, it is not the gravamen of this action and the damages that could be recovered in the breach of contract claim would be limited compared to the damages that are available in a negligence claim.

To the extent that Defendant implies that the economic loss doctrine applies because of the breach of contract claim, Plaintiff respectfully requests that this Court treat the breach of contract claim as an alternative pleading pursuant to Rule 8(d)2. However, because the independent causes of action each have merit and are each supported by the applicable caselaw, both should survive this Motion.

The policy behind the economic loss doctrine is that tort law is not designed to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. *Corporex Dev. & Constr. Mgmt Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414. Here, the duty to maintain Plaintiff's health records confidential is governed by state and federal laws independent of the Defendant's internal privacy policies. Unlike the Plaintiff in *Wells Fargo*, the Plaintiff here is not attempting to "transform a claim of contractual non-performance into a tort claim." *Medpace, Inc. v. Biothera, Inc.* (S.D. Ohio 2013) at 11.

Furthermore, Defendant has moved to dismiss Plaintiff's breach of contract claim and has at no point admitted that it had a contractual relationship with Plaintiff and/or the

putative class members.  Therefore, without alleging or acknowledging the existence of contract, it is disingenuous for Defendant to rely on the economic loss doctrine.

Finally, Ohio Courts do not apply the Economic Loss Doctrine when the parties have a "special relationship" such as an insurance agent has with a client. ("[B]ecause the record demonstrates that Wells Fargo had a special relationship with Artisan akin to privity, the economic-loss doctrine did not bar the negligent-misrepresentation claim against it"). *Burlington Ins. Co. v. Artisan Mech., Inc.*, 936 N.E.2d 114, 118  2010 Ohio 3142 (Ohio App. 2010).

It is fundamental that a medical provider/patient relationship is as "special" and bound by "privity" as insurance agent/client. Other Courts have recognized a medical provider relationship as "special" within the data breach context, citing an "exception to the economic loss doctrine where tort claims either involve a fiduciary relationship or rendering of professional services." *K.A. ex rel. B.W. v. Children's Mercy Hosp.* (W.D. Mo. 2019) at 8.

### E.  Breach of Contract

Defendant argues that Plaintiff's breach of contract action is inadequate.  However, Plaintiff alleges that the putative class members entered into express agreements with Defendant related to their protection of health information and that the health information was disclosed in accordance with the express agreement by the Defendant that it would be properly secured. ECF #6 ¶78.   A health care provider's failure to comply with Notices of Privacy Practices is sufficient to sustain a breach of contract action. *Smith v. Triad of Ala., LLC* (M.D. Ala. 2015). The *Smith* Court held that determining the nature of a privacy agreement should be decided based upon the evidence, not the pleadings. *Id* at

13

32. Failures to adhere to privacy pledges are actionable in contract. *Dolmage v. Combined Ins. Co. of Am*. No. 14 C 3809 (N.D. Ill. 2016) at 17. Here, Defendant failed to comply with agreements made with Plaintiff and other patients to secure their health information. At the pleading stage, before Plaintiff has had an opportunity to do any discovery into the policies and practices of Defendant, the breach of contract claim should survive.

### F. Implied Contract

Pursuant to Rule Rule 8(d)(2), this count is pled in the event that this Court finds there is not an express contract. ECF #6 ¶86. In Ohio, an implied-in-fact contract exists if surrounding circumstances, including the conduct and declarations of the parties, makes it inferable that the contract exists as a matter of tacit understanding. *Stepp v. Freeman, 119 Ohio App.3d 68, 694 N.E.2d 510 (Ohio App. 1997)*. Ohio Courts acknowledge that implied contracts can exist within documents such as employee handbooks. *Wright v. Schwebel Baking Co.*, 2005 Ohio 4475 (Ohio 2005).

Here, Plaintiff alleges that he paid the Defendant and provided his medical history and personal information to the Defendant with the expectation that the Defendant would comply with state and federal laws and industry standards to protect the information. ECF #6 ¶86. It is reasonable and logical for Plaintiff to expect Defendant to implement cybersecurity procedures and Plaintiff adequately alleges that Defendant was obliged to take reasonable steps to safeguard the information. ECF #6 ¶86.

Defendant's argument that Plaintiff has failed to adequately plead the facts and circumstances that give rise to the implied complaint both ignores the allegations that are incorporated in the claim and is also an attack on a "straw man," since an implied

contract is inherently devoid of facts and details surrounding the creation of the contract. Furthermore, at the pleading stage, before Plaintiff has had an opportunity to examine the policies and procedures of Defendant, it is premature to require Plaintiff to provide details of the Defendant's internal privacy policies.

### G. Unjust Enrichment

Contrary to Defendant's arguments, a claim for unjust enrichment arises not from a true contract, but from a contract implied in law, or quasi contract. *Grothaus v. Warner, 2008 Ohio 6683 (*Ohio App. 12/18/2008) at 4 citing *Hummel v. Hummel* (1938), 133 Ohio St. 520. Unjust enrichment is an equitable remedy. *Id* at 5. The court implies a promise to pay a reasonable amount for services rendered where a party has conferred a benefit on another without receiving just compensation for his or her services. *ID*.

Plaintiff here alleges that he and the putative class members made payments to Defendant in exchange for services, which included maintaining the privacy of Plaintiff's protected health information. ECF #6 ¶93-94. It would be unjust for Defendant to keep those payments without providing the services, which included taking reasonable steps to protect Plaintiff's health and personal information and for which it was paid. ECF #6 ¶93-94. Defendant's citations to out of state court's applying out of state unjust enrichment laws is a distraction, since Plaintiff's Unjust Enrichment claim is brought pursuant to Ohio law.

### H. ORC 2307.60

As Defendant notes, when analyzing ORC 2307.60 claims, some Ohio District Courts have required both a conviction against a Defendant and have applied a one year statute of limitation. This requirement removes all teeth from the statute and prevents the statute

15

from reasonable application. Plaintiff respectfully requests that this Court follow Judge Moore's dissenting opinion in *Red Ferris Chevrolet v. Aylsworth*, (Ohio App. 9/29/2008), 2008 Ohio 4950 (Ohio App. 2008) "[I]t is clear that the legislature did not intend "criminal act" to amount to a criminal conviction that requires proof beyond a reasonable doubt. Had the legislature intended such a requirement for purposes of R.C. 2307.61, it would have used the words "criminal conviction" in R.C. 2307.60." *Red Ferris Chevrolet v. Aylsworth*, (Ohio App. 9/29/2008), 2008 Ohio 4950 (Ohio App. 2008) at 8.

Plaintiff alleges that he and the putative class members were victims of multiple crimes as a result of Defendant's actions and/or inactions. ECF #6 ¶100. A plain reading of ORC 2307.60 reads that the victim of "a criminal act" has a civil action. ORC 2307.60 (A). Because the statute has no limitations as to requiring a conviction against any particular convicted defendant, it should be applied according to its text and Plaintiff's ORC 2307.60 (A) claim should survive.

In addition, the circumstances of this breach remain under investigation by the U.S. Department of Health and Human Services (HHS). (See https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.). If the Court is inclined to dismiss the ORC 2307.60 claim, Plaintiff requests that this Court do so without prejudice pending resolution of the HHS investigation and whether or not criminal charges are brought in connection with the breach.

## I. Fair Credit Reporting Act

Defendant argues that it is not subject to the Fair Credit Reporting Act (FCRA). Defendant argues that because Plaintiff alleges that Defendant provides health care services that it cannot also be true that,

> On a cooperative nonprofit basis or for monetary fees, Defendant regularly assembles consumer information including, among other things, insurance policy information, such as names, dates of birth, and Social Security Numbers of those insured; claims information, such as the date of loss, type of loss, and amount paid for claims submitted by an insured; and a description of insured items. Defendant also regularly utilizes interstate commerce to furnish such information on consumers (consumer reports) to third parties. ECF #6 ¶108

Regardless that this creates a false dichotomy, this is simply not true. Defendant's business is not only to treat patients but also to coordinate the monitoring, treatment, testing, and reporting of consumers with third parties. ECF #6 ¶108. Defendant's statement that it "does not" do these things because Plaintiff alleges that it also does other things is simply untrue and an inappropriate for a 12(B)(6) Motion.

While Defendant cites to a 7th circuit decision, *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 452 (7th Cir. 2015) which held that the FCRA did not apply to Advocate Hospital, this does nothing to help the Defendant here. Plaintiff does not allege that Defendant is a hospital and it is misleading for the Defendant to represent itself as one. The Defendant here provides mental health treatment, STI testing, drug testing, and similar services to consumers and then, for a cost to the patient, transmits reports of the patient's compliance to third parties. [1] ECF #6 ¶2, 24, 25. 26, 28, 29, 30, 108.

Defendant here is more akin to the Defendant in *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3rd Cir. 2017) or *Doe v. Caremark, L.L.C.*, 348 F.Supp.3d 724 (S.D. Ohio 2018). Even if Defendant were to be characterized as a hospital, it is more akin to the hospital in *Smith v. Triad of Ala., LLC* (M.D. Ala. 2015),

---

[1] The Defendant provides the reports primarily to agencies affiliated with the criminal justice system and law enforcement.

which did not dispute that it was a consumer reporting agency. In any event, these are questions of fact and not for a 12(B)(6) motion.

### J. O.R.C. 3701.243

Defendant's Motion to Dismiss Plaintiff's ORC 3701.243 claim because, it argues, the statute applies only to government agencies. It reads the "of state or local government" provision to modify not only state but also to modify "person" in the sentence, "no person or agency." This reading is inconsistent with the remaining provisions of ORC 3701.343 (C)(1), (C)(1)(a) and (C)(2) which refer to "no person or government agency." In addition, 3701.43 (B)(3) references that it applies to "each health care facility in this state."

Importantly, ORC 3701.248 applies as an exception to ORC 3701.243 for emergency medical services workers and funeral service workers. ORC 3701.248 (B)(1). It defines funeral service workers as "a person licensed as a funeral director or embalmer under Chapter 4717 of the Revised Code or an individual responsible for the direct final disposition of a deceased person." ORC 3701.248. It is illogical that an exception would be broader than the rule. Therefore, there is no reason to limit ORC 3701.248 to government agencies.

Plaintiff alleges that the Defendant's initial intake requests HIV status and that as a result of the data breach, his HIV status was, without his written authorization, disclosed. ECF #6 ¶27, 29, 134, 135. Defendant argues that Plaintiff does not allege his HIV status. However, ORC 3701.248 is not limited to the disclosure of HIV positive test results but applies to any test results, including negative results. By disclosing Plaintiff's HIV status, although negative, it violated ORC 3701.243 A(1) and (2). While it may be

18

appropriate when it comes time to move for certification that there be a sub-class for HIV positive patients under ORC 3701.243(A)(3), that is not at issue here.

## IV. CONCLUSION

**For the reasons set for above**, Plaintiff requests that this Court deny Defendant's *Motion to Dismiss Plaintiff's First Amended Complaint*. If this Court is inclined to grant Defendant's Motion or any part therein, Plaintiff seeks leave to amend accordingly.

Respectfully submitted,

s/ *Michael L. Fradin*
Attorney for Plaintiff and Putative Class

LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was filed electronically on March 3, 2020.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.

                                      s/*Michael L. Fradin*
                                      MICHAEL L. FRADIN (0091739)